PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

KENNETH ROSHAUN REID,
          *Defendant-Appellant.*

No. 06-4826

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Cameron McGowan Currie, District Judge.
(0:04-cr-00353-CMC)

Argued: February 1, 2008

Decided: April 16, 2008

Before MICHAEL and SHEDD, Circuit Judges,
and Liam O'GRADY, United States District Judge for the Eastern
District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Shedd wrote the opinion, in
which Judge Michael and Judge O'Grady joined.

## COUNSEL

**ARGUED:** David Bruce Betts, Columbia, South Carolina, for Appellant. Mark C. Moore, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Reginald I. Lloyd, United States Attorney, Columbia, South Carolina, for Appellee.

**OPINION**

SHEDD, Circuit Judge:

Kenneth Roshaun Reid appeals from his convictions for conspiracy to distribute cocaine base and murder through the use of a firearm in the course of a drug trafficking crime. Although we conclude that the district court erred in instructing the jury on the conspiracy charge, Reid has failed to demonstrate that the error affected his substantial rights. For this reason and because we conclude that substantial evidence supports both convictions, we affirm.

I

Reid and co-defendants Patrick Ray Simpson and Samuel Larell Anderson were charged in a 14-count superseding indictment (the "Indictment") with various violations of federal drug and firearms laws. Pertinent to this appeal, Count 1 charged all three defendants with conspiracy to "possess with intent to distribute and to distribute 50 grams or more of cocaine base (commonly known as 'crack' cocaine)" in violation of 21 U.S.C. §§ 841 and 846. Count 4 charged all three defendants with the murder of police informant Ernest "Dunther" Hollis, in violation of 18 U.S.C. § 924(j). Simpson and Anderson reached plea agreements with the government and testified against Reid at trial.

Viewed in the light most favorable to the government, the evidence at trial established that Reid was a longtime dealer of crack cocaine in the areas of Fort Mill and Rock Hill, South Carolina. Beginning in the 1990s, Reid repeatedly purchased as much as one-half kilogram of cocaine from various suppliers which he converted into crack for sales on the street. Reid also purchased crack directly from his suppliers for resale. Reid supplied crack to a number of repeat customers. Dennis Watts bought crack from Reid "seven to eight" times a week. Beginning in the Spring of 2003, Donald Hill purchased 2-3 ounces of crack each week from Reid for approximately six months. Many of Reid's customers were themselves dealers who re-sold the drugs supplied by Reid. Anderson purchased "8 balls or quarter ounces" of crack from Reid "well over 50 times" in one five-month period, during which he lived with Reid's mother and grandmother and sold

crack from their yard. Simpson purchased ounce quantities of crack from Reid for resale more than twenty times.

Reid relied on numerous friends and associates to maintain his drug supply. In 2003, Reid sought out his friend Tommie Watts for help locating a new cocaine supplier. Watts began purchasing cocaine for Reid, which Reid then converted into crack for resale, and eventually Watts introduced Reid to his supplier. Reid also purchased cocaine from Simpson after Simpson relocated to Texas and established a relationship with a cocaine supplier there.

In early 2003, Hollis, a drug dealer and past customer of Reid's, began cooperating with the FBI and local authorities in an effort to "work off" drug charges against him. In April, Hollis made a controlled purchase of one ounce of crack from Reid, which was recorded on audiotape. Reid was arrested in September, and a Hi-Point pistol was recovered from his vehicle.

Following his arrest, Reid indicated to Anderson that he believed Hollis was the informant who had "set him up" and stated that if Hollis did not show up to testify against him, the police would "have no case." Noting that Anderson was with Reid on the night of Hollis's controlled purchase, Reid told Anderson that he might be implicated as well and asked for his help to murder Hollis. Anderson agreed and drove Reid to Hollis's apartment on several occasions to look for Hollis. Meanwhile, Reid attempted to find someone else to handle the murder itself, and after making one unsuccessful solicitation, Reid recruited Simpson, who agreed to kill Hollis.

On September 28, 2003, Reid, Anderson, and Simpson drove to the Catawba Pointe apartments, where Hollis's girlfriend lived. With Reid waiting in their car, Anderson and Simpson went to the apartment, knocked on the door, and spoke to Hollis. Simpson then pulled a gun and shot Hollis, who died at the scene. After the murder, Reid, Anderson, and Simpson drove to Charlotte, North Carolina, where Reid disposed of the murder weapon and attempted to establish an alibi. Anderson continued to purchase crack from Reid for resale until his arrest the following month.

At trial, Reid was convicted on Counts 1 and 4.[1] Reid moved for judgment of acquittal under Fed. R. Crim. P. 29, which the district court denied. The district court sentenced Reid to 240 months' imprisonment on Count 1, and life imprisonment on Count 4. Reid now appeals.

## II

Reid first contends that his convictions on Counts 1 and 4 must be reversed. He argues that because the district court's instructions authorized conviction on Count 1 only if the jury also concluded that the drug conspiracy involved the amounts of either 50 or more grams of crack or 5 or more grams of crack, the jury's failure to find either of those amounts constitutes an acquittal. Reid also argues that because a conviction on Count 1 was a predicate to conviction on Count 4, his conviction on Count 4 must be reversed as well. We reject Reid's arguments.

## A.

At trial, the district court, the government, and the defense expended considerable energy attempting to agree on the proper manner in which to charge the jury in light of our decision in *United States v. Collins*, 415 F.3d 304 (4th Cir. 2005). In *Collins*, we held that for purposes of determining a sentence under 21 U.S.C. § 841(b), the quantity of drugs attributable to a defendant convicted of conspiracy to violate § 841(a) must be found by the jury using the principles of co-conspirator liability set forth in *Pinkerton v. United States*, 328 U.S. 640 (1946).[2] *Collins* followed our decision in *United States v.*

---

[1]Reid was also convicted on counts 12 and 14 of the Indictment for unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(3), but does not appeal these convictions. Reid was acquitted on Counts 2, 3, 11, and 13. Counts 9 and 10 were dismissed by the government prior to trial.

[2]The relevant conspiracy statute is 21 U.S.C. § 846, which provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Count 1 charged Reid with conspiracy to violate

*Promise*, 255 F.3d 150 (4th Cir. 2001) (en banc), in which we held that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the maximum sentence that may be imposed upon a defendant convicted of violating § 841(a) in the absence of a jury finding of a threshold drug quantity that would trigger the enhanced penalty provisions of § 841(b)(1)(A) or § 841(b)(1)(B) is 20 years, as provided in § 841(b)(1)(C).

Attempting to apply these principles, the district court submitted to the jury the question of the quantity of drugs involved in the conspiracy, instructing:

> In order to establish the offense of conspiracy as to the defendant, the government must prove beyond a reasonable doubt each of the following: One, that the conspiracy described in the Indictment was willfully formed and existed beginning at least in early 2000, and continued thereafter up to and including the date of the Indictment; and, two, that the defendant willfully became a member of the conspiracy; and, three, that the conspiracy involved 50 grams or more of cocaine base, commonly known as crack cocaine . . . or the lesser included amount of five grams or more of cocaine base, commonly known as crack cocaine.

J.A. 959-60. The district court also provided the jury with a special verdict form containing three questions concerning Count 1. The first asked whether the jury found Reid "guilty of conspiracy to possess

---

§ 841(a)(1), which makes it a crime to intentionally "manufacture, distribute, or dispense, or possess with the intent to manufacture, distribute, or dispense, a controlled substance." Section 841(b) establishes the penalties for violations of § 841(a). Section 841(b)(1)(A) provides for a minimum sentence of 10 years' imprisonment for individuals found guilty under § 841(a) of offenses involving 50 grams or more of cocaine base. Section 841(b)(1)(B) mandates a five-year minimum sentence for offenses involving 5 grams or more of cocaine base. Section 841(b)(1)(C) prescribes a penalty of not more than 20 years' imprisonment for violations of § 841(a) involving less than five grams, or an unspecified amount, of cocaine base.

with intent to distribute and to distribute cocaine base (commonly known as 'crack cocaine')." The jury answered "yes" to this question. The second and third questions on the special verdict form gave the jury two options relating to the amount of crack involved in the conspiracy, asking whether the jury found that the conspiracy involved 50 grams or more of crack, or the lesser amount of 5 or more grams of crack. The jury answered "no" to both of these questions, making no finding as to the quantity of crack involved.

Upon receipt of the jury's verdict, the district court recognized a possible inconsistency and brought it to the parties' attention. The district court suggested submitting special interrogatories that would ask if the jury found that the conspiracy involved fewer than 5 grams, or an unspecified amount, of crack. After discussing the matter, however, the district court, the government, and counsel for Reid all agreed that no special interrogatories were necessary. All agreed that the jury had returned a guilty verdict as to Count 1 in the "default position," and that the significance of the jury's failure to find any specific drug quantity was that Reid could not be subjected to a punishment beyond the maximum of 20 years provided for in § 841(b)(1)(C).

### B.

On appeal, Reid now contends that the jury's failure to find any drug quantity requires reversal of his conviction on Count 1 because the district court's instructions permitted the jury to convict him only if it concluded that the conspiracy involved the threshold amounts of 50 or more, or 5 or more, grams of crack. Because Reid did not raise this argument below, our review is for plain error. *United States v. Evans*, 416 F.3d 298, 300 (4th Cir. 2005). To establish plain error, Reid must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). Even if Reid makes this threshold showing, Fed. R. Crim. P. 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals. *See id.* at 735-36. We conclude that the district court erred in instructing the jury that it could convict Reid on Count 1 only if it also found that the drug conspiracy involved specified quantities of crack. As we explained in *Collins*, "[g]uilt of the substantive offense defined in § 841(a) is not

dependent upon a determination of the amount or type of narcotics distributed." 415 F.3d at 314. Rather, in order to obtain a conviction on Count 1, the government was required to prove that (1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) Reid knew of the conspiracy; and (3) Reid knowingly and voluntarily became a part of this conspiracy. *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). In instructing the jury that a specific drug quantity was an element of conviction under § 841(a), the district court misstated the law and heightened the government's burden of proof.

We must next determine whether the error was plain. To be plain, an error must be "clear" or "obvious." *Olano*, 507 U.S. at 734. An error is clear or obvious "when the settled law of the Supreme Court or this circuit establishes that an error has occurred." *Promise*, 255 F.3d at 160 (internal citations omitted). In light of our clear statement in *Collins* that a jury finding as to drug quantity is not required for conviction under § 841(a), we conclude that the district court's error was plain.

We cannot conclude, however, that the error affected Reid's substantial rights. In order for Reid to demonstrate that the error affected his substantial rights, he must show that it was prejudicial; that is, that it "actually affected the outcome of the proceedings." *Id.* (internal quotation and citations omitted). To determine if Reid can make this showing, we must first determine whether the error lies in Reid's sentence or in his conviction. *See id.* Unsurprisingly, Reid argues that the error is in his conviction, and that in light of the district court's instructions, the jury's findings constituted an acquittal as to Count 1.

We addressed a similar issue in *Collins*, where we concluded that the district court erred by failing to give the jury a supplemental instruction necessary to permit it to determine which penalty subsection in § 841(b) applied to the defendant. *Collins*, 415 F.3d at 312-13. As we explained, however, that error affected only the applicability of the heightened penalty provisions of § 841(b)(1)(A) or (b)(1)(B), and thus only the sentence the defendant was eligible to receive. *Id.* at 314.

Likewise in this case, the district court's erroneous instructions do not affect the validity of Reid's conviction on Count 1, but only

whether he was eligible to receive a sentence beyond the statutory maximum that applies in the absence of a jury finding of specific drug quantities. Without such a finding, Reid could not have been sentenced to the harsher penalties prescribed by § 841(b)(1)(A) or § 841(b)(1)(B), but only under the 0 to 20 year range provided for in § 841(b)(1)(C). Because Reid did not receive a heightened sentence under § 841(b)(1)(A) or (b)(1)(B), but rather a 20-year sentence under § 841(b)(1)(C), his substantial rights were not affected.

Moreover, even if Reid could demonstrate that the error affected his substantial rights, we would decline to notice it here. Our discretion to notice plain error "is appropriately exercised only when failure to do so would result in a miscarriage of justice, such as when the defendant is actually innocent or the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Hastings*, 134 F.3d 235, 244 (4th Cir. 1998) (internal quotation and citation omitted). "Central to this inquiry is a determination of whether, based on the record in its entirety, the proceedings against the accused resulted in a fair and reliable determination of guilt." *United States v. Cedelle*, 89 F.3d 181, 186 (4th Cir. 1996).

We have no difficulty concluding that Reid's trial resulted in a "fair and reliable determination of guilt," and that reversal of Reid's convictions would be an inappropriate exercise of our discretion. Viewing the record as a whole, it is clear that the evidence against Reid was overwhelming. Witness after witness testified to Reid's involvement in the purchase and sale of large quantities of crack and in Hollis's murder. Moreover, Reid's trial counsel — likely recognizing that the jury's apparent lack of unanimity concerning the quantity of drugs involved in the conspiracy would result in a lower sentence for Reid — was quick to concede the validity of the guilty verdict on Count 1. Accordingly, reversal of Reid's convictions would itself be a miscarriage of justice, and we refuse Reid's invitation to do so.

## III

Reid next argues that the district court erred in denying his motion for acquittal as to Counts 1 and 4. We review *de novo* the district court's ruling on a motion for judgment of acquittal and we will uphold the verdict if, viewing the evidence in the light most favorable

to the government, it is supported by substantial evidence. *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation and citation omitted).

A.

As to Count 1, Reid argues that the evidence was insufficient to support his conviction because it established no more than a buyer/seller relationship between himself and others. As we have explained, in order to prove the conspiracy charged in Count 1, the government was required to establish (1) an agreement to possess with intent to distribute cocaine base existed between two or more persons; (2) Reid knew of the conspiracy; and (3) Reid knowingly and voluntarily became part of the conspiracy. *Burgos*, 94 F.3d at 857. Evidence of a "buy-sell transaction . . . coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were coconspirators." *United States v. Mills*, 995 F.2d 480, 485 n.1 (4th Cir. 1993). Likewise, evidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy, especially when coupled with substantial quantities of drugs. *Burgos*, 94 F.3d at 858.

We conclude that Reid's argument is without merit. At trial, several witnesses testified to Reid's involvement in the purchase of substantial quantities of crack. For example, Latorrence Singletary testified that he and Reid would split the cost of a "big eight" (4.5 ounces of powder cocaine) from a New York supplier, which Reid would cook into crack for both of them to sell. Isaiah Robinson and Bobby Wilson testified to selling crack to Reid or with Reid on multiple occasions. Hydell Harris testified to helping Reid find a new supplier of cocaine in 2002 and arranging two nine-ounce purchases for Reid in 2003. The testimony of Watts, Hill, Anderson, and Simpson permitted the jury to conclude that Reid supplied a group of repeat customers, at least some of whom re-sold the drugs they had purchased from Reid. Together, this evidence demonstrated that Reid had established relationships with both sellers and buyers and engaged in

repeated transactions involving substantial quantities of drugs, and is thus sufficient to sustain the jury's verdict.

### B.

Reid also argues that there was no substantial evidence to support his conviction on Count 4, which charged Reid with murdering Hollis with a firearm in violation of 18 U.S.C. § 924(j)(1).[3] In order to obtain a conviction on Count 4, the government was required to prove that (1) Reid was guilty of the drug conspiracy charged in Count 1; (2) during and in relation to that underlying conspiracy Reid used or carried a firearm, or in furtherance of that conspiracy, possessed a firearm; and (3) that Reid used the firearm to murder Hollis (or aided and abetted another in doing so). *See United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007).

Reid argues that his conviction on Count 4 must be reversed because the government failed to prove that the firearm used to kill Hollis was used or carried "in relation to" or "in furtherance of" the drug conspiracy alleged in Count 1, as required by 18 U.S.C. § 924(c). We have previously explained that the "in relation to" requirement is to be construed liberally, and is satisfied by proof that the "firearm has some purpose or effect with respect to the drug trafficking crime. The gun at least must facilitate or have the potential of facilitating the drug trafficking offense." *United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000) (internal quotations and citations omit-

---

[3]18 U.S.C. § 924(j)(1) provides:

(j) A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—

(1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life;

Subsection (c)(1)(A) makes § 924's penalty provisions applicable to "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." Section 924(c)(2) defines "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)."

ted). Although this requirement is not satisfied if the presence of a firearm is "the result of accident or coincidence . . . it is enough for § 924(c)(1) purposes if the firearm was present for protection or to embolden the actor." *Id.* (internal quotations and citations omitted).

Under this standard, Reid's argument must fail. The testimony at trial indicated that Reid wanted Hollis murdered because Hollis had participated in controlled drug buys leading to Reid's arrest and prosecution. Reid stated that if Hollis did not testify, the police would "have no case" and that he wanted to stop Hollis from going to court. Reid recruited Anderson and Simpson, with whom he had engaged in numerous drug transactions, to carry out the murder. Following Hollis's murder, Reid continued to sell drugs to Anderson. Taken together, this evidence was sufficient for the jury to conclude that the murder weapon was carried "in relation to" or "in furtherance of" the ongoing drug conspiracy involving Reid because it had at least the potential to facilitate that conspiracy. With Hollis dead, Reid was more likely to escape conviction, and therefore more likely to be able to continue selling drugs. Accordingly, the district court properly denied Reid's Rule 29 motion.

IV

For the foregoing reasons, we affirm Reid's convictions.

*AFFIRMED*