PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

v.

RAYMOND DANGELO ALLEN,

        *Defendant-Appellant.*

No. 12-4168

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Martin K. Reidinger, District Judge.
(1:10-cr-00066-MR-DLH-1)

Argued: March 22, 2013

Decided: April 26, 2013

Before KING, GREGORY, and KEENAN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge King and Judge Keenan joined.

## COUNSEL

**ARGUED:** Aaron Edmund Michel, Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Anne M. Tompkins, United States

Attorney, Charlotte, North Carolina, Richard Lee Edwards, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

## OPINION

GREGORY, Circuit Judge:

In June 2010, law enforcement uncovered an extensive crack cocaine distribution network operating in Buncombe and McDowell counties, North Carolina. For his part in the enterprise, Raymond Allen was convicted by a federal jury in the Western District of North Carolina of conspiring to possess fifty grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. As a result, Allen was sentenced to ten years' imprisonment, the mandatory minimum sentence in effect at the time he allegedly committed the offense. Allen now challenges his conviction, arguing there was insufficient evidence to support his knowledge of the drug ring. Further, he charges that the district court erred in denying his pretrial motions, and thus his conviction should be vacated. Finally, Allen argues the district court erred in imposing the ten-year mandatory minimum sentence given that Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, prior to his sentencing. For the reasons that follow, we affirm Allen's conviction but vacate his sentence and remand to the district court for resentencing.

I.

On October 5, 2010, Raymond Allen was one of eleven defendants named in a fifteen-count indictment. Five additional co-conspirators were also named in the indictment. Allen was charged with one count of conspiring to possess

fifty grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment was the result of an extensive investigation that took place between January and June of 2010. Prior to the start of trial, Allen made two pretrial motions relevant to this appeal. First, Allen moved to see his codefendants' Presentence Reports (PSR) and sealed sentencing memoranda. The district court denied the motion in a written order. Second, Allen moved to call a criminal defense expert to help explain the potential significance of all of the indicted codefendants reaching plea agreements with the government. The court orally denied the motion.

A.

Trial was held from June 27 to June 29, 2011. The evidence adduced revealed a multi-tiered crack cocaine distribution ring operating in Western North Carolina. As proof of the extensive operation, the government called twenty-seven witnesses, including thirteen law enforcement officers, three confidential informants, three codefendants, and five separately identified co-conspirators. The government also introduced recordings of telephone calls, photographs, and videotapes.

The mountainous evidence showed that the drug network operated in the following manner. The bottom link of the drug distribution chain consisted of approximately ten street-level dealers. The street dealers sold $5 and $20 crack rocks in low-income neighborhoods. These street dealers would buy the crack cocaine from three suppliers higher up in the distribution chain. The second-rung suppliers would in turn buy crack cocaine from Chrissawn Folston. Finally, Folston would buy his supply of crack cocaine from Willie Chappell, who supplied the drug to him in bulk. The government further claimed that when Chappell was unable to supply crack cocaine, Folston turned to Allen as the back-up supplier.

Allen does not dispute that the evidence introduced at trial sufficiently detailed this operating scheme. He admits that the

drug network was "substantial and involved most of the ten codefendants, five named co-conspirators, and other named conspirators." Appellant's Br. 37. Allen does dispute, however, the government's assertion at trial that when Chappell was unable to supply crack cocaine to Folston, Folston would turn to him as a back-up supplier. This brings us to the events that provided the basis for Allen's arrest.

B.

On May 17, 2010, Folston tried to purchase crack cocaine from Chappell, but Chappell was unable to deliver. Folston, therefore, called Allen and placed an order for two ounces of the drug. Allen quoted Folston a price of $950 an ounce and told him to meet him at his mother's house in Asheville, North Carolina. Folston's girlfriend, Robin Anderson, drove him to Allen's mother's house. Folston successfully purchased the crack cocaine from Allen.

When Folston got home, he weighed his purchase and realized he only received one-and-a-half ounces of crack cocaine instead of the two ounces for which he paid. He called Allen to complain, at which point Allen told him that the next time Folston needed a supply he would reconcile the discrepancy. Placated, Folston went about selling the crack cocaine to the second-rung suppliers, who in turn sold the drug to the street dealers for distribution.

The next day, May 18, Folston again called Allen, requesting another two ounces of crack cocaine, but in order to make up for the day before, Folston told Allen that he was only going to pay for an ounce and a half. Allen agreed and told Folston to again meet him at his mother's house. Robin Anderson drove Folston to Asheville for a second time. Although Allen was not there when Folston arrived, Folston eventually purchased the crack cocaine from Allen at a nearby apartment complex.

As it turns out, Folston's girlfriend, Robin Anderson, was a government informant. The police, therefore, had placed a GPS tracking device on her vehicle and were able to physically follow her. They therefore observed Folston buying and selling crack on multiple occasions, including the two transactions between him and Allen. Thus, all of the above events were testified to by Anderson, law enforcement officials who conducted surveillance, and Folston himself. As such, Allen does not attempt to allege that there was insufficient evidence to prove the two buy-sell transactions between him and Folston.

The government also introduced testimony that while Allen was detained awaiting trial, he had a conversation with a street dealer named Wilkerson, who lamented to Allen that they would all "be partying" if the other street dealers had "kept their mouths shut and hadn't told on everyone and got all this stuff started." Allen supposedly replied to this by saying: "You got that right. She the one that got me, too. Set me up." For clarity, Wilkerson asked: "Who? Robin [Anderson]?" Allen replied: "You got that right." The government asserted that this conversation was relevant as it showed that Allen was aware of the drug distribution network.

## C.

At the close of the government's case-in-chief, Allen moved for judgment of acquittal. The court and the government engaged in a discussion concerning the evidence presented to the jury, particularly the evidence linking Allen to the conspiracy. Allen alleged that while the government may have proven that he was involved in two buy-sell transactions, it did not prove beyond a reasonable doubt that he participated in or had any knowledge of the overarching conspiracy. The district court considered the argument and denied the motion. Allen put on no evidence and renewed the motion at the end of trial, which the district court again denied. The jury found Allen guilty. Ten days later, Allen filed a renewed motion for

judgment of acquittal. The court denied the motion, issuing a written memorandum and order. *See United States v. Allen*, No. 1:10-cr-66-1 (W.D.N.C. Aug. 3, 2011).

Allen timely appealed, arguing: (1) there was insufficient evidence for a jury to find him guilty of conspiracy to distribute; (2) the district court erred by denying him access to his codefendants' PSRs and by refusing his expert testimony; and (3) the district court erred in sentencing him in accordance with the statutory mandatory minimum given that the threshold amount of crack cocaine necessary for the mandatory minimum was raised by the Fair Sentencing Act prior to his sentencing.

## II.

We review the district court's denial of a motion for judgment of acquittal de novo. *United States v. Lentz*, 383 F.3d 191, 199 (4th Cir. 2004). Given that Allen is challenging the sufficiency of the evidence presented to the jury, we view the evidence presented at trial in the light most favorable to the government and will sustain the verdict if we find that any rational factfinder could find the elements of the crime beyond a reasonable doubt. *See United States v. Burgos*, 94 F.3d 849, 854 (4th Cir. 1996) (en banc).

To be found guilty of conspiracy to distribute crack cocaine, the government must prove: (1) an agreement to possess crack cocaine with intent to distribute between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of the conspiracy. *See United States v. Strickland*, 245 F.3d 368, 384-85 (4th Cir. 2001). A conspiracy may "be proved wholly by circumstantial evidence." *Burgos*, 94 F.3d at 858. And, "one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence." *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir.

1993); *see also United States v. Brooks*, 662 F.2d 1138, 1147 (4th Cir. 1992) ("[A] defendant need not have had knowledge of his co-conspirators . . . or knowledge of the details of the conspiracy."). Therefore, "[o]nce a conspiracy has been proved, the evidence need only establish a slight connection between any given defendant and the conspiracy to support conviction." *Strickland*, 245 F.3d at 385.

We will uphold a conspiracy conviction even if the defendant's involvement is minimal. *See, e.g.*, *Brooks*, 957 F.2d at 1147; *United States v. Seni*, 662 F.2d 277, 285 n.7 (4th Cir. 1991). We have also "reiterate[d] that the focus of a conspiracy charge is the agreement to violate the law, not whether the conspirators have worked out the details of their confederated criminal undertakings." *United States v. Mills*, 995 F.2d 480, 484 (4th Cir. 1993). As such, our precedent is unambiguous in that a defendant may be convicted of conspiracy to distribute even if the evidence shows "participation in only one level of the conspiracy charged in the indictment." *United States v. Lewis*, 54 F.3d 1150, 1154 (4th Cir. 1995) (citation omitted).

The government undisputedly proved a multi-tiered crack cocaine distribution conspiracy. Allen's argument therefore hinges on his assertion that the government did not prove his knowledge of the conspiracy, and instead, only put on evidence that he sold 3.5 ounces of crack cocaine to Folston. Allen argues that the evidence only shows two independent buy-sell transactions, which does not equate to knowledge of a broader conspiracy.

Our precedent short-circuits Allen's argument. Indeed, we have said that evidence of the sale of crack cocaine on its own is too thin to support an inference of conspiracy. *See United States v. Edmonds*, 679 F.3d 169, 174 (4th Cir. 2012), *judgment vacated on other grounds*, 133 S. Ct. 376 (2012) ("[T]he mere evidence of a simple buy-sell transaction is sufficient to prove a distribution violation under § 841, but not conspiracy under § 846."); *United States v. Thomas*, 489 F. App'x 688,

691 (4th Cir. 2012) (unpublished per curiam), *cert. denied*, 133 S. Ct. 588 (2012). But we have also stated that a single buy-sell transaction "is at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists." *Mills*, 995 F.2d at 485 n.1; *United States v. Hackley*, 662 F.3d 671, 679 (4th Cir. 2011). Additionally, evidence of a defendant buying or selling a substantial quantity of drugs over a short period of time is enough to raise an inference of a distribution conspiracy. *United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008) ("[E]vidence of a buy-sell transaction . . . coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were coconspirators.").

At trial, the government put on evidence that the 3.5 ounces (99.2 grams) of crack cocaine that Allen sold Folston was enough to produce over 1000 crack rocks. Given that we have upheld convictions for intent to distribute charges for amounts much less than that involved here, *see, e.g.*, *United States v. Lamarr*, 75 F.3d 964, 973 (4th Cir. 1996) (5.72 grams), it is fair to conclude that a reasonable juror could infer that when Allen sold Folston such a substantial quantity of crack cocaine over the course of two days, Allen knew the drug was going to be further distributed. It is hard to fathom that one would purchase in short order the equivalent of 1000 crack rocks for personal use.

Thus, viewing the evidence in the light most favorable to the government, the evidence of the two consecutive buy-sell transactions, both of which involved substantial amounts of crack cocaine, was enough to support a conspiracy to distribute conviction. This conclusion is further buttressed by Allen's jailhouse conversation, which indicates that Allen was at least somewhat cognizant that the distribution scheme in question was larger than the two buy-sell transactions of which he was a part. We affirm Allen's conspiracy to distribute conviction.

### III.

Next, Allen makes two charges of error in regards to the district court's pretrial evidentiary rulings. First, Allen argues the district court erred by refusing to grant him permission to see his codefendants' PSRs. And second, he argues the district court erred by denying him the use of expert testimony to help explain the ramifications of his codefendants' plea agreements with the government. We review the district court's evidentiary rulings, including the decision to review a codefendant's PSR, for abuse of discretion. *United States v. Trevino*, 89 F.3d 187, 193 (4th Cir. 1996).

### A.

PSRs have "always been jealously guarded . . . by the federal courts." *Trevino*, 89 F.3d at 192. Before a district court can grant a defendant's request to view a codefendant's PSR, therefore, the district court must perform an *in camera* review of the PSR. *Id.* This *in camera* review is not mandatory, however. The district court need only perform the *in camera* examination once the defendant has "clearly specified the information contained in the report that he expects will reveal exculpatory or impeachment evidence." *Id.* Thus, "as a prerequisite for an *in camera* review, an accused must plainly articulate how the information contained in the PSR will be both material and favorable to his defense." *Id.* at 192-93.

When Allen requested the PSRs and sentencing memoranda for his codefendants, he based his argument on the unsealed sentencing memorandum of one codefendant, Brandon Michael Walker. Walker's sentencing memorandum revealed that his PSR recommended that 361.1 grams of crack cocaine be found attributable to him for sentencing. By contrast, the government's sentencing memorandum recommended that Walker be held responsible for at least 1.4 grams of crack cocaine but less than 2.8 grams. The difference in amounts had the effect of reducing Walker's sentence range

from 97-121 months to 12-18 months. Using Walker as an example, Allen asserted that he was "entitled to know what other 'sweetheart deals' his alleged codefendants and alleged co-conspirators have received, as such information is directly related to their bias, motivation, and credibility." Allen believed that the large discrepancy in the amount of crack cocaine attributed to Walker in his PSR versus the requested amount in the government's sentencing memorandum was evidence of the government trading jail-time for testimony. Therefore, Allen wanted to know if similar agreements were reached by other codefendants.

Applying the standard outlined in *Trevino*, the district court did not find Allen's reasons as to why he needed access to his codefendants' PSRs compelling enough to conduct an *in camera* review, and subsequently denied Allen's motion. The district court declared that Allen did not identify any specific information in the PSRs and sentencing memoranda that would be material or favorable to his defense. The court explained that contrary to Allen's assertions, Walker did not receive a "sweetheart deal." The lower amount of crack cocaine reflected in Walker's sentencing memorandum was the amount of the crack cocaine that he sold directly, versus the PSR amount which reflected the amount of crack cocaine involved in the larger conspiracy, thus vitiating Allen's argument. The district court also noted that the codefendants would all be called as government witnesses at trial and therefore could be cross-examined regarding their plea agreements or any promises of leniency.

It is true that evidence of a "sweetheart deal" is relevant to a witness's credibility. *See Campbell v. Reed*, 594 F.2d 4, 7 (4th Cir. 1979). However, this does not mean that a defendant can go on a fishing expedition every time a codefendant pleads guilty, as *Trevino* clearly requires a specific explanation of what exculpatory evidence a PSR will contain. 89 F.3d at 192-93. For the reasons stated by the district court, Allen's conclusory claims did not meet this threshold when he moved

for access to the PSRs. The district court did not abuse its discretion by denying Allen's motion and refusing to conduct an *in camera* review of the codefendants' PSRs.

B.

Turning to Allen's motion to admit expert testimony, in order for expert testimony to be admissible, two requirements must be met: (1) the testimony must involve scientific, technical, or other specialized knowledge, and (2) the testimony must aid the trier of fact to help understand or resolve a fact issue. Fed. R. Evid. 702. Allen wanted to use an expert criminal defense attorney to explain the legal significance of § 5K1.1 letters, § 3553(e) motions, and 21 U.S.C. § 851 notices—all of which entail the government asking for a lesser sentence in light of a defendant's substantial cooperation—in order to show that the codefendants called to testify against him may be biased. The district court denied the motion after conducting a hearing *in limine*, reasoning that Allen could ask for a clarifying instruction if the testimony regarding the codefendants' plea process was too complex. The court refused to allow a separate expert to testify, however, as that would effectively "supplant" the court's function.

We find that the district court did not abuse its discretion in denying this motion. Essentially, Allen wanted to introduce expert testimony solely for the purpose of undermining the credibility of the codefendant witnesses. This is not the function of an expert. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (holding "that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702"). A juror can connect the dots and understand the implications that a plea agreement might have on a codefendant's testimony — "it is certainly within the realm of common sense that certain witnesses would have an incentive to incriminate the defendant in exchange for a lower sentence." *United States v. French*, 12 F.3d 114, 117

(8th Cir. 1993). This is not an issue of fact that would be better explained by an expert.

Given the nature of the requested expert testimony, the district court did not err in denying Allen's motion to admit expert testimony. Expert testimony of this nature is not permitted under the Federal Rules of Evidence. Moreover, in an abundance of caution, the district court admonished the jury to examine more carefully the testimony of witnesses that may be motivated by the desire to escape punishment. Finding no error in the district court's rulings on Allen's pretrial motions, we see nothing in the record that warrants vacating Allen's conspiracy conviction.

## IV.

Allen finally argues that the district court erred by applying the ten-year mandatory minimum sentence for offenses involving fifty or more grams of crack cocaine, given that the threshold amount for the mandatory minimum to apply was raised to 280 grams by the Fair Sentencing Act prior to his sentencing. Whether the new threshold amount announced in the Fair Sentencing Act applied to Allen is a question of law which we decide de novo. *United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010).

At sentencing, Allen's Guidelines range, with an offense level of twenty-six and criminal history category of III, was calculated to be seventy-eight to ninety-seven months. Allen's PSR recommended the mandatory minimum of ten years be imposed, as the mandatory minimum would have applied at the time Allen committed the crime. *See* 21 U.S.C. § 841(b)(1)(A) (2009) (amended 2010) (providing for a ten-year mandatory minimum sentence for offenses involving more than fifty grams of crack cocaine). Therefore, the PSR recommended sentence was 120 months. Allen objected to the PSR, arguing that the court should follow the newly enacted Fair Sentencing Act, which increased the threshold amount of

crack cocaine necessary for the mandatory minimum from 50 grams to 280 grams. Given that his offense involved 3.5 ounces (99.2 grams) of crack cocaine, Allen argued he did not meet the new threshold amount, and therefore was ineligible for the ten-year mandatory minimum sentence.

The district court rejected Allen's argument, applying our decision in *United States v. Bullard*, 645 F.3d 237, 248 (4th Cir. 2011), in which we held that the Fair Sentencing Act does not apply retroactively. Thus, because the lower threshold amount for the mandatory minimum was in force at the time Allen committed the offense, the district court found that *Bullard* controlled and the mandatory minimum applied. Allen was sentenced to the mandatory minimum of 120 months on February 16, 2012.

While the district court may have correctly applied our precedent at the time it reached its decision, our holding in *Bullard* has since been limited by the recent Supreme Court decision in *Dorsey v. United States*, 132 S.Ct. 2321 (2012). In *Dorsey*, the Court held that "Congress intended the Fair Sentencing Act's more lenient penalties to apply to those offenders whose crimes preceded August 3, 2010 [the date the Fair Sentencing Act was enacted], but who are sentenced after that date." *Id.* at 2331. As the government concedes, the Fair Sentencing Act therefore applies to all sentences imposed after its enactment, regardless of when the underlying crime was committed. Thus, our holding in *Bullard*—that the Fair Sentencing Act does not have retroactive effect—is limited to the extent that the Fair Sentencing Act *does* apply to all sentences handed down after its enactment.

Because the Fair Sentencing Act was passed before Allen was sentenced and Allen did not possess 280 grams of crack cocaine necessary for the ten-year mandatory minimum sentence to apply under the Fair Sentencing Act, the district court erred by sentencing Allen to the mandatory minimum. We

therefore vacate Allen's sentence and remand the case for resentencing.

## V.

To conclude, we find that Allen's conviction of conspiracy to possess crack cocaine with the intent to distribute was well supported by substantial evidence. Further, the district court committed no error in its pretrial evidentiary rulings. However, we vacate Allen's sentence and remand the case to the district court for resentencing because Allen is ineligible for the ten-year mandatory minimum sentence imposed.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*