**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4695**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GILBERT JUNIOR DAVIS, a/k/a Face,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge. (8:16-cr-00585-TDC-3)

Submitted: December 19, 2019                   Decided: January 17, 2020

Before WYNN and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Philip Urofsky, Daniel Sachs, SHEARMAN & STERLING LLP, Washington, D.C.; Luke T. Taeschler, SHEARMAN & STERLING LLP, New York, New York, for Appellant. Robert K. Hur, United States Attorney, Burden H. Walker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Gilbert Junior Davis appeals from his convictions for three counts of use of a communications device to facilitate a drug felony, in violation of 21 U.S.C. § 843(b) (2018). On appeal, he asserts that the trial judge's failure to recuse herself requires that his convictions be vacated. He also challenges the validity of his convictions given the inconsistent verdicts and contends that the evidence was insufficient to support his convictions.

I.

Davis trafficked large amounts of PCP in and around the Maryland area. Davis acted as a middleman, regularly obtaining PCP from his primary suppliers (Mitchell Brooks and Alexander Patton), and selling the PCP to his customers, including Robert Beasley. A superseding indictment was subsequently returned against Davis, which charged Davis with a PCP conspiracy and four counts of using a communication device to facilitate his drug conspiracy.

On the first day of his trial, Davis filed a pro se motion to have the district judge assigned to his case, Paula Xinis, recused. Davis alleged that Magistrate Judge Charles Day presided over a pre-trial hearing that considered the Government's alleged failure to produce certain surveillance of Davis, while Judge Day authorized one of the warrants involved. With regard to Judge Xinis, Davis asserted that she knew of the conflicts but "did nothing to resolve the issues, including the refusal to appoint new counsel, or grant the defendant a much needed extension of time to prepare for trial due to the lack of discovery." Davis contended that Judge Xinis's affirmation of Judge Day's findings

2

demonstrated her "collusion with the government to withhold exculpatory discovery material." Judge Xinis denied Davis's motion, determining that there was "no basis to conclude that anything Judge Day did" was "incorrect, in violation of the law, [or] unethical."

During Davis's trial, numerous witnesses testified about his PCP trafficking. One of Davis's drug customers, Beasley, testified that he bought between one-half to two ounces of PCP from Davis on a weekly basis for about a year. Beasley told the jury that he would contact Davis "by phone," and he interpreted numerous text messages he exchanged with Davis. Beasley's description of the defendant's PCP trafficking conspiracy was corroborated by phone records, intercepted calls between Davis and his supplier, and law enforcement surveillance that was presented throughout the trial. The phones records, for example, revealed a pattern: Whenever Beasley contacted Davis, Davis would then contact Brooks. In addition to the numerous intercepted communications in which Davis himself participated, the Government presented intercepted communications between Davis's suppliers (Brooks and Patton) that further implicated Davis in the conspiracy.

The jury returned a guilty verdict on three of the four counts of using a communications device to facilitate a drug crime, acquitting Davis on the fourth. The jury was unable to reach a verdict on the drug conspiracy charge.

Just before Davis was to be sentenced, Judge Xinis held a telephonic status conference to inform the parties that she had decided sua sponte to recuse herself from further proceedings and that the case was going to be reassigned. "[I]n reviewing Mr.

3

Davis's presence report," Judge Xinis stated that she began to suspect that she had previously represented the defendant 20 years ago as an assistant federal public defender in a 1998 federal misdemeanor drug possession case. The report had "jogged" Judge Xinis's memory because of particular facts noted in the presence report regarding the offense, specifically an alias Davis had used and the fact that he had secreted the drugs in his groin area. Judge Xinis made clear that "during all pretrial and trial proceedings," she had "not [had] one inkling that [she] had represented Mr. Davis 20 years ago when [she had been] handling almost all Federal misdemeanors." Given the "hig[h] volume" and "fas[t] pace" of the misdemeanor docket, and "without anything occurring before" the presence report that would have brought the prior representation to her attention, Judge Xinis had remained "completely in the dark."

Davis's case was reassigned to Judge Theodore D. Chuang of the District of Maryland for post-trial briefing and sentencing. Davis filed a consolidated motion for a new trial and acquittal. In it and in a subsequent supplemental filing, he made two of the three arguments contained in his briefs before this Court. First, he argued that the evidence presented at trial was insufficient to support the jury's guilty verdicts. Second, Davis contended that the jury's inability to reach a verdict on the predicate drug conspiracy charge was impermissibly inconsistent with its guilty findings on the three phone counts. Davis did not mention Judge Xinis's recusal in his post-trial briefings or his argument before Judge Chuang, nor did he suggest that any ruling Judge Xinis had made in the course of the case was biased or incorrect. However, he did reassert all previously asserted grounds,

including "pre-trial motions, motions in limine, motions during trial and objections, as if fully set forth herein."

Judge Chuang presided over Davis's sentencing hearing. At the outset, he denied Davis's twin motions for acquittal and new trial. Judge Chuang did not address Judge Xinis's recusal, or make any finding in that regard. Judge Chuang ultimately sentenced the defendant to a total term of 92 months' imprisonment. Davis timely appealed.

## II.

Davis contends that Judge Xinis's failure to recuse herself prior to trial constitutes reversible error. This court generally "review[s] a judge's recusal decision for abuse of discretion." *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 167 (4th Cir. 2014). However, because Davis did not move for recusal in the district court on the grounds raised here,[*] we only review his claim for plain error. Fed. R. Crim. P. 52(b); see *United States v. Minard*, 856 F.3d 555, 557 (8th Cir. 2017) (stating standard of review). "Plain error requires the existence of (1) an error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Stitz*, 877 F.3d 533, 536 (4th Cir. 2017) (internal quotation marks omitted), *cert. denied*, 138 S. Ct. 1572 (2018).

---

[*] Davis contends that he raised the issue in district court by filing a recusal motion on other grounds and by filing a motion for a new trial that purported to re-raise every ground already raised. However, "[t]o preserve an argument on appeal, the defendant must object on the same basis below as he contends is error on appeal." *United States v. Westbrooks*, 780 F.3d 593, 595 (4th Cir. 2015) (internal quotation marks omitted). Here, Davis presses a fundamentally different argument on appeal than he did in the district court.

We find that Davis has not established plain error here. "Under 28 U.S.C. § 455(a) [(2018)], all 'judge[s] of the United States' have a general duty to 'disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned.'" *Belue v. Leventhal*, 640 F.3d 567, 572 (4th Cir. 2011) (quoting 28 U.S.C. § 455(a)) (alterations in original). Moreover, judges should disqualify themselves "[w]here [they] ha[ve] a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1) (2018). In analyzing the trial court's rulings, we consider "whether the judge's impartiality might be questioned by a reasonable, *well-informed* observer who assesses *all the facts and circumstances*." *United States v. Stone*, 866 F.3d 219, 230 (4th Cir. 2017) (internal quotation marks omitted). Davis bears the burden "to provide th[is] [c]ourt with the information it needs to decide an issue on appeal." *Id.* (citing Fed. R. App. P. 30(a)(1)). "[T]he more common a potentially biasing circumstance and the less easily avoidable it seems, the less that circumstance will appear to a knowledgeable observer as a sign of partiality." *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998) (internal quotation marks omitted). In determining whether a judgment should be vacated for a violation of § 455, we must consider the risk of injustice to the parties or in other cases and the risk of undermining the public's confidence in the judicial process. *Liljeberg v. Health Servs.*, 486 U.S. 847, 864 (1988).

A judge's prior representation of a litigant generally does not require the judge's recusal. *See Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 307 F.3d 617, 621-22 (7th Cir. 2002) ("Nothing in the Code of Conduct for federal judges makes prior representation of a litigant a disqualifying event. The norm among new appointees to the bench is that once two years pass, perhaps even earlier, a judge is free to sit in controversies involving former

6

clients."). Here, Judge Xinis did not have actual knowledge of her prior representation of Davis at the time of the trial, and there are no additional facts which might "reasonably cause an objective observer to question [her] impartiality." *Liljeberg*, 486 U.S. at 865. Davis does not assert that he was aware of his previous relationship with Judge Xinis, and presumably Davis had fewer lawyers in his life than Judge Xinis had clients. Second, Judge Xinis's representation of Davis was two decades before the trial and involved a misdemeanor, rendering her failure to immediately recognize him unremarkable. Third, Davis does not point to any error or questionable judgment made by Judge Xinis during the trial. On appeal, Davis only challenges rulings made by Judge Chuang. Fourth, Judge Xinis sua sponte recused herself immediately when she realized the potential conflict and noted that her prior representation had "in no way" affected her oversight of the case. Accordingly, any failure to recuse or overturn the verdict was not plain error.

III.

Davis next argues that the jury's failure to render a verdict on the drug conspiracy was fatally inconsistent with the jury's convictions for communications facilitation, where the same conspiracy was the required predicate. However, "it has long been settled that inconsistent jury verdicts do not call into question the validity or legitimacy of the resulting guilty verdicts." *United States v. Green*, 599 F.3d 360, 369 (4th Cir. 2010); *see United States v. Powell*, 469 U.S. 57, 64-65 (1984); *United States v. Louthian*, 756 F.3d 295, 305 (4th Cir. 2014) ("[A]n inconsistent verdict can result from mistake, compromise, or lenity, and a jury could just as likely err in acquitting as in convicting."). Thus, we cannot infer from the jury's failure to reach a verdict that the jury rejected the conspiracy charge. *See*

7

*United States v. Hassan*, 742 F.3d 104, 144 n.36 (4th Cir. 2014) (declining to consider jury's acquittal of defendant on one conspiracy charge when considering challenge to sufficiency of evidence to support conviction on related conspiracy charge because "a jury is permitted to return an inconsistent verdict if it sees fit to do so"); *see also Campbell v. Boston Scientific Corp.*, 882 F.3d 70, 75 (4th Cir. 2018) ("Attempting to reverse engineer the jury's thought processes based on its verdicts is always a dangerous enterprise, because we have no way of knowing what really happened during jury deliberations.").

Davis contends that *Powell* is no longer good law, in light of the Supreme Court's decision in *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995), which required every element of the crime to be found by a jury beyond a reasonable doubt. According to Davis, when *Powell* was decided, certain lower courts held that the underlying drug felony element of § 843(b) needed only to be proven by a preponderance of the evidence. Thus, Davis presumably contends that *Powell* rested on the conclusion that the verdicts were not entirely inconsistent, as the jury could reasonably find that the conspiracy had been proven by a preponderance of the evidence, but not beyond a reasonable doubt. Unfortunately for Davis, *Powell* does not rest on this issue at all and instead simply rules that "there is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled." 469 U.S. at 68. As such, the inconsistent verdicts in this case do not require reversal of Davis's convictions.

IV.

Finally, Davis contends that the evidence supporting his convictions was insufficient. This court "review[s] a challenge to the sufficiency of the evidence de novo,

8

and . . . must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it." *United States v. Bran*, 776 F.3d 276, 279 (4th Cir. 2015) (citations omitted). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Edlind*, 887 F.3d 166, 172 (4th Cir. 2018) (internal quotation marks omitted). "A defendant bringing a sufficiency challenge must overcome a heavy burden," as reversal is "confined to cases where the prosecution's failure is clear." *United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015) (internal quotation marks omitted).

To establish Davis's guilt under 21 U.S.C. § 843(b), the evidence must show that Davis: (1) used a communication facility (here, a cellular telephone); (2) used the communication facility to facilitate the commission of a drug offense; and (3) did so knowingly and intentionally. *United States v. Johnstone*, 856 F.2d 539, 542-43 (3d Cir. 1988). The drug offense here was the PCP conspiracy. To establish Davis committed a conspiracy offense, the evidence must show that: (1) an agreement to possess and distribute PCP existed between two or more people; (2) Davis knew of the conspiracy; and (3) Davis knowingly and voluntarily became a part of the conspiracy. *United States v. Kellam*, 568 F.3d 125, 139 (4th Cir. 2009).

Here, Davis alleges that, while there is evidence showing that he bought and sold PCP, there was insufficient evidence that he knowingly joined the conspiracy. "A mere buyer-seller relationship is insufficient to support a conspiracy conviction." *United States v. Howard*, 773 F.3d 519, 525 (4th Cir. 2014). However, "evidence of continuing

9

relationships and repeated transactions can support the finding that there was a conspiracy, especially when coupled with substantial quantities of drugs." *United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008). "Additionally, evidence of a defendant buying or selling a substantial quantity of drugs over a short period of time is enough to raise an inference of a distribution conspiracy." *United States v. Allen*, 716 F.3d 98, 104 (4th Cir. 2013).

Viewed in the light most favorable to the Government, we find the record supports the jury's verdict. The trial testimony supported the existence of an ongoing conspiracy with Brooks, Patton, and Beasley. The circumstantial evidence—the amount of drugs Davis sold to Beasley (1/2 ounce to 2 ounces), the repeated nature of his transactions, and the frequency with which the transactions occurred (on a weekly basis for a year)—supported an inference that Davis's multiple purchases from Brooks and Patton and sales to Beasley contained an implicit agreement for Davis to resell PCP. In addition, there was evidence regarding Brooks and Patton and the large scope of their conspiracy, including a stash house. Further, there was evidence that, after taking an order from Beasley, Davis would regularly contact Brooks to fill the order. Thus, Davis's argument that the evidence established only a buyer-seller relationship misses the mark, and Davis's convictions were supported by sufficient evidence.

For the foregoing reasons, we affirm Davis's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

10