**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-4437**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANTHONY TOMMY FOSTER,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:20-cr-00249-RJC-DCK-1)

_____

Submitted:  August 9, 2022                    Decided:  September 20, 2022

_____

Before RICHARDSON and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:** Andrea E. Gambino, LAW OFFICES OF ANDREA E. GAMBINO, Chicago, Illinois, for Appellant.  Dena J. King, United States Attorney, Elizabeth M. Greenough, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a jury trial, Anthony Tommy Foster was convicted of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (Count 1), and possession with intent to distribute five kilograms or more of cocaine, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), 18 U.S.C. § 2 (Count 2). The district court determined that Foster qualified for sentencing as a career offender and sentenced him to concurrent 25-year terms of imprisonment.[1] On appeal, Foster contends that the district court erred in admitting excerpts of a video recording of Foster and his codefendants in the police station interview room and allowing the jury to use a Government-prepared transcript of the recording, denying his Fed. R. Crim. P. 29 motion, failing to give a missing witness instruction, and imposing a substantively unreasonable sentence. We affirm.

The evidence presented at trial showed that Colombiano, a broker in Mexico, contacted a confidential informant ("CI") in North Carolina, looking for a cocaine source in the United States for a customer in Chicago who wanted between 20 and 40 kilograms of cocaine and possibly more than 100 kilograms. Working under the direction of law enforcement, the CI agreed to supply the cocaine at $25,000 per kilogram but requested that the first transaction occur in North Carolina. A person later identified as Reynaldo Padilla called the CI from a Chicago telephone number to make arrangements.

---

[1] Foster was subject to enhanced sentencing pursuant to 21 U.S.C. §§ 841(a)(1), 851, based on his prior federal conviction for possession with intent to distribute cocaine base.

2

Colombiano told the CI that Padilla would purchase 20 kilograms of cocaine for $500,000 and that the CI should "front" Padilla another 4 kilograms. While the original plan had been for 40 kilograms, the amount was reduced for logistical reasons, with an eye toward a later sale of additional cocaine if all went well.

On June 29, 2020, Reynaldo Padilla and Alejandro Padilla ("the Padillas") arrived at a Hilton Garden Inn in Gastonia, North Carolina, to meet the CI and an undercover officer. The Padillas, who were from Chicago, were driving a dark Buick Encore with Illinois license plates. Reynaldo showed the CI and the undercover officer a photograph on his cell phone of packages of vacuum-sealed money and said that the man with the money was nearby, assuring the undercover officer that he trusted the man and had been doing business with him "for a while." (J.A. 139). Reynaldo explained that there were six bundles of $70,000, and one bundle of $80,000—totaling $500,000. The Padillas then drove to retrieve the money.

A short time later, the Padillas arrived at a nearby Hampton Inn where Foster—also from the Chicago area—was waiting. He carried a duffel bag of money directly to the back of the Encore, placed the duffel bag in the back of the Encore, and the Padillas drove away. Returning to the Hilton Garden Inn, the Padillas gave the duffel bag of money to the undercover officer in exchange for the cocaine. All three men were arrested shortly thereafter.

Following their arrests, the Padillas and Foster were transported to the Gaston County Police Department for questioning. Afterwards, all three men were moved to a single interview room to await transfer to the Gaston County jail. There was an audio and

video recording device in the room that recorded the men whispering to each other and talking behind their hands or with their shirts covering their mouths, and Foster writing notes on scraps of paper that he showed to his codefendants before putting them in his mouth and chewing them and later spitting into a wastepaper basket. The parties stipulated that the video recordings were authentic and admissible copies of the original recordings.

On appeal, Foster argues that the district court erred in admitting an 18-minute video of excerpts from the original 2-hour recording of Foster and the Padillas and allowing the use of a transcript prepared by Ubaldo D. Rios, who was a Special Agent with the United States Department of Homeland Security and the case agent for the investigation. We generally "review a district court's evidentiary rulings for abuse of discretion," *United States v. Webb*, 965 F.3d 262, 266 (4th Cir. 2020), but when a defendant fails to preserve the issue for appeal, we review for plain error, *United States v. Moore*, 810 F.3d 932, 939 (4th Cir. 2016).

Because we conclude that Foster failed to preserve a challenge to the abridged video, we review his claim for plain error. Under this standard, we "will correct an unpreserved error if (1) an error was made (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 890 F.3d 480, 491 (4th Cir. 2018) (internal quotation marks omitted).

Foster claims that the district court erred in admitting the abridged video because it was incomplete. However, he does not challenge its authenticity, he stipulated to the

4

admissibility of the complete video, which was admitted at trial, and Foster was free to publish the full recording to the jury but did not do so.

Although he asserts that the video was introduced in violation of Rules 401, 402, and 403 of the Federal Rules of Evidence, Foster offers no explanation or argument to support his claim. "A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (cleaned up). Therefore, we consider Foster's argument as to Rules 401, 402, and 403 to be waived. In any event, we conclude that the introduction of the video was consistent with these rules.

Foster also argues that the abridged video was admitted in violation of Fed. R. Evid. 404(b). Rule "404(b)(1) prohibits evidence of a crime, wrong, or other act from being used to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Webb*, 965 F.3d at 266 (internal quotation marks omitted). "But Rule 404(b) does not affect the admission of evidence that is intrinsic to the alleged crime." *Id.* (internal quotation marks omitted). "Instead, the rule is only applicable when the challenged evidence is extrinsic, that is, separate from or unrelated to the charged offense." *United States v. Brizuela*, 962 F.3d 784, 793 (4th Cir. 2020) (internal quotation marks omitted). "In contrast, acts that are a part of, or intrinsic to, the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." *Id.* (internal quotation marks omitted). "Evidence of other bad acts is intrinsic if, among other things, it involves the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." *Webb*, 965 F.3d at 266 (cleaned up). The

5

recording in this case, which depicts Foster interacting with his codefendants shortly after they were all arrested, is not evidence of prior bad acts but, rather, completes the story of the charged conspiracy.  Introduction of the video did not violate Rule 404(b).

Foster also claims for first time on appeal that the recording violated his Fifth Amendment protection against self-incrimination.  Because it only proscribes self-incrimination that is compelled by official coercion, the Fifth Amendment does not preclude voluntary admissions made spontaneously or in response to questions put forth by the Government.  *See United States v. Washington*, 431 U.S. 181, 186-88 (1977).  The statements Foster made in the interview room were not in response to police interrogation but were freely given to his codefendants.  Thus, the admission of the statements did not violate Foster's protection against self-incrimination.  *See United States v. Swift*, 623 F.3d 618, 623 (8th Cir. 2010) (holding that leaving codefendants alone in interrogation room equipped with video and audio monitoring equipment not "functional equivalent" of police interrogation).  We conclude that the district court did not err, plainly or otherwise, in admitting the abridged video.

With regard to Foster's challenge to the transcript, Foster argues that the court erred in allowing the jury to use the transcripts because there was no sound basis for the identification of the speakers.[2]  Specifically, Foster argued that Agent Rios, who prepared the transcript, had no contact with Foster and only had one brief telephone conversation

---

[2] Foster preserved this issue by filing in the district court a motion in limine challenging the publication of the transcript, and objecting to the transcript at trial.

6

with one of the Padillas and, therefore, his voice identification in the transcript was unreliable.

"Whether to allow the use of transcripts to aid in the presentation of tape recorded evidence is within the district court's sound discretion." *United States v. Collazo*, 732 F. 2d 1200, 1203 (4th Cir. 1984). Foster's claim that Agent Rios only spoke with one of the Padillas and never spoke with Foster is inconsistent with Agent Rios' uncontradicted trial testimony that he had personally spoken with each of the men and had listened to Reynaldo's conversations with the CI. Second, the court gave cautionary instructions to the jury, both when the transcript was initially presented and again when the court charged the jury prior to deliberations, that the recording was the evidence and the transcript was a representation of who was speaking and what was said, but that the jury must decide whether the transcript was accurate and to disregard the transcript to the extent that the jury found it to be incorrect or inaccurate. Thus, through the instructions, "the jury was made aware that the transcripts offered only the government's interpretations of what the [video] contained," and the "repeated cautionary instructions cured any prejudice that might have resulted from discrepancies between [video] and transcript." *Id.* Accordingly, the district court did not abuse its discretion by allowing publication of the transcript as an aid to the jury.

Citing Fed. R. Crim. P. 29(a), Foster filed a motion for judgment of acquittal the day after the jury returned its guilty verdict. The district court denied the motion, noting that it was untimely because Rule 29(a) requires the defendant to file such a motion before the case is submitted to the jury. Alternatively, the court stated that, even if it was treated

7

as filed under Fed. R. Civ. P. 29(c), the motion would fail because the evidence was sufficient to support the jury's verdict on each count.

Foster contends that the district court erroneously dismissed his post-verdict motion for judgment of acquittal as an untimely Fed. R. Crim. P. 29(a) motion and that the court further erred in summarily concluding that, even if the motion were construed as a Rule 29(c) motion, the evidence was sufficient to support his convictions. We need not consider whether the court properly denied the motion as untimely under Rule 29(a) because we conclude that the court properly determined that, even construed as a Rule 29(c) motion, Foster's motion did not entitle him to relief.

We review de novo the denial of a Rule 29(c) motion for judgment of acquittal after a guilty verdict. *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019). In assessing the sufficiency of the evidence, we determine whether there is substantial evidence to support the verdict when viewed in the light most favorable to the Government. *Id.* Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted). "A defendant who brings a sufficiency challenge bears a heavy burden, as appellate reversal on grounds of insufficient evidence is confined to cases where the prosecution's failure is clear." *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018).

Foster argues that the evidence was insufficient to show that he intended to join the conspiracy to distribute cocaine (Count 1) or aid and abet the possession with intent to distribute cocaine (Count 2). To secure a conspiracy conviction under 21 U.S.C. §§ 841,

8

846, the Government was required to prove beyond a reasonable doubt: "(1) an agreement to distribute . . . [cocaine] existed between two or more persons; (2) [Foster] knew of the conspiracy; and (3) [Foster] knowingly and voluntarily became a part of this conspiracy." *United States v. Ath*, 951 F.3d 179, 185 (4th Cir. 2020) (internal quotation marks omitted). "Such an agreement need not be formal and may instead be a tacit or mutual understanding between the defendant and his accomplice[s]." *United States v. Gomez-Jimenez*, 750 F.3d 370, 378 (4th Cir. 2014) (internal quotation marks omitted). A conspiracy is often "clandestine and covert," and is generally proven through circumstantial evidence. *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). "[O]ne may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence." *United States v. Allen*, 716 F.3d 98, 103 (4th Cir. 2013) (internal quotation marks omitted). Thus, "once a conspiracy has been proved, the evidence need only establish a slight connection between any given defendant and the conspiracy to support conviction." *Id.* (cleaned up).

As for the substantive drug count, to prove possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), the Government was required to show "that a defendant (1) possessed a controlled substance; (2) knew of the possession; and (3) intended to distribute the controlled substance." *Ath*, 951 F.3d at 188. Foster was charged with aiding and abetting the § 841(a)(1) offense. "Aiding and abetting is not a standalone criminal offense—rather, it simply describes the way in which a defendant's conduct . . . violat[ed] . . . a particular law." *United States v. Ali*, 991 F.3d 561, 574 (4th Cir.) (internal quotation marks omitted), *cert. denied*, 142 S. Ct. 486 (2021). "The same

9

evidence establishing a defendant's participation in a conspiracy may support a conclusion that a defendant participated in the principal's unlawful intent to possess and distribute drugs, thereby proving guilt of aiding and abetting as well." *Burgos*, 94 F.3d at 873.

Viewed in the light most favorable to the Government, we conclude that the evidence supports the jury's verdict that Foster was guilty of both conspiracy to distribute cocaine and aiding and abetting possession of cocaine with intent to distribute. Foster suggests that the transaction was a single buyer-seller transaction rather than a conspiracy. However, the underlying offense involved 24 kilograms of cocaine, and evidence of a buyer-seller relationship, coupled with a "substantial quantity of drugs," is sufficient to establish a conspiracy. *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008). Furthermore, "any agreement made in addition to or beyond the bare buy-sell transaction may be taken to infer a joint enterprise between the parties beyond the simple distribution transaction and thereby support a finding of conspiracy." *United States v. Edmonds*, 679 F.3d 169, 174 (4th Cir.), *vacated on other grounds*, 568 U.S. 803 (2012). Here, the arrangement included the fronting of 4 kilograms of cocaine and plans to purchase an additional 20 kilograms of cocaine, and potentially much more. Thus, we conclude that the evidence supported the finding that a conspiracy existed.

Other proof of a conspiracy abounds in the record. For instance, when the Padillas pulled up at the Hampton Inn, they did not get out of their vehicle. Foster walked directly to the back of the vehicle, the hatchback opened, he placed a duffel bag inside, and the Padillas drove away. That duffel bag contained $498,501 in cash—$1499 less than the $500,000 that Colombiano had agreed to pay for the 20 kilograms of cocaine. Foster had

10

a total of $1450 in large bills on his person when he was arrested—almost the exact sum of money missing from the $500,000 that the Padillas were supposed to deliver to the CI. From these facts, the jury could reasonably infer that Foster had taken the $1450 from the $500,000 that the Padillas were supposed to pay the CI, and hence, that he was aware that the duffel bag contained a large sum of cash. And in the police station interview room a short time later, Foster spoke to the Padillas in hushed tones, whispering to them not to "say shit," and writing notes that he showed to Reynaldo before putting them in his mouth and later spitting into a wastepaper basket. The jury could reasonably infer from these interactions that Foster was a knowing participant in the conspiracy. Taken together, we conclude that this evidence was sufficient to support a finding that Foster knew of the conspiracy and voluntarily joined it, and therefore was guilty of conspiracy. Moreover, the evidence that supports Foster's conspiracy conviction also supports his conviction for aiding and abetting possession with intent to distribute cocaine.

Foster next contends that the district court erred in failing to give a missing witness instruction concerning the Padillas, neither of whom were called to testify for the Government. Because Foster neither requested nor objected to the court's failure to sua sponte give such an instruction, we review this claim only for plain error. *United States v. Alvarado*, 816 F.3d 242, 248 (4th Cir. 2016). A missing witness instruction is only appropriate if a witness is unavailable to a party because the other "party has it peculiarly within his or her power to produce [the] witnesses." *United States v. Brooks*, 928 F.2d 1403, 1412 (4th Cir. 1991) (cleaned up). On the facts of this case, we conclude that the

11

district court did not plainly err in declining to sua sponte issue a missing witness instruction.

Finally, Foster argues that the district court imposed a substantively unreasonable sentence because it was greater than necessary to meet the goals of sentencing. We review a criminal sentence for reasonableness "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). This review requires consideration of both the procedural and substantive reasonableness of the sentence. *Id.* at 51. In evaluating procedural reasonableness, we consider whether the district court properly calculated the defendant's Guidelines range, analyzed the 18 U.S.C. § 3553(a) factors, considered the parties' arguments, and sufficiently explained the selected sentence. *Id.*

Finding Foster's sentence procedurally reasonable,[3] *see United States v. Provance*, 944 F.3d 213, 218 (4th Cir. 2019), we turn to Foster's challenge to the substantive reasonableness of his sentence. To be substantively reasonable, a sentence must be "sufficient, but not greater than necessary," to satisfy the goals of sentencing. 18 U.S.C. § 3553(a). "Any sentence that is within or below a properly calculated Guidelines range is presumptively reasonable." *United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014). "Such a presumption can only be rebutted by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *Id.*

---

[3] Foster's Guidelines range was driven by his career offender designation rather than by the lower Guidelines range calculated under Chapters 2 and 3 of the Sentencing Guidelines. Therefore, any potential error in calculating his Guidelines range under Chapters 2 and 3 is harmless. *See United States v. Mills*, 917 F.3d 324, 330 (4th Cir. 2019).

After considering the information in the presentence report, the trial evidence, the parties' arguments, Foster's allocution, the character testimony of his relatives, Foster's respectful demeanor towards the court, Foster's role in the conspiracy and the large amount of drugs and money in the offense, and Foster's extensive criminal history, the court imposed concurrent 25-year prison terms, a variance 5 years below the low end of the advisory Guidelines range of 360-months-to-life-imprisonment. The court explained that Foster's criminal history and role in the offense justified a within-Guidelines sentence, but in light of Foster's age (46), a 25-year term was sufficient but not greater than necessary to accomplish the 18 U.S.C. § 3553(a) sentencing goals.

Foster asserts that the lack of evidence against him renders his sentence substantively unreasonable. This, however, is effectively a rehashing of Foster's argument regarding the sufficiency of the evidence, which we have already rejected.

Foster also argues that his sentence is disproportionate to those imposed on the Padillas. The stated goal of 18 U.S.C. § 3553(a)(6) is "to eliminate unwarranted sentencing disparity nationwide," not disparity between codefendants. *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996). "The Guidelines' goal of national sentencing uniformity is not aimed only at the particular criminal conduct that co-conspirators may share, but also addresses other factors that often vary between co-conspirators like acceptance of responsibility and assistance to the government." *Id.* "A district court is not required to consider the sentences of codefendants, and it is well settled that codefendants and even coconspirators may be sentenced differently for the same offense." *United States v. Pierce*, 409 F.3d 228, 235 (4th Cir. 2005) (citations omitted). Here, the district court expressly

13

rejected Foster's argument regarding unwarranted sentencing disparity with Reynaldo Padilla, emphasizing that the two were not similarly situated. On this record, we conclude that Foster has failed to rebut the presumption of reasonableness accorded his downward variant sentence.

For all of these reasons, we affirm the criminal judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

14